Sarah Spinuzzi (SBN 305658)
Email: sarah@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

*Attorney for Plaintiff*
ORANGE COUNTY COASTKEEPER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>Rancho Sierra Vista, a California Corporation; Rancho HHO Land Corporation, a California Corporation,<br><br>Defendants. | Case No.: 8:20-cv-1993<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

Orange County Coastkeeper ("Coastkeeper" or "Plaintiff"), by and through its counsel, hereby alleges:

## I.  **PRELIMINARY STATEMENT**

1. This is a civil suit brought under the citizen suit enforcement provision of the Federal Clean Water Act. 33 U.S.C. §§ 1251 *et seq.* This Court has subject matter jurisdiction over the parties and this action because it arises under federal law. The events giving rise to Plaintiff's action and the violations described in this Complaint occurred, and continue to occur, within this judicial district. *See* 33 U.S.C. § 1365(a)(1).

2. This action arises out of the unlawful pollution of Trabuco Creek caused by Defendant Rancho Sierra Vista ("RSV") and Defendant Rancho HHO Land Corporation ("Rancho HHO Land Corporation") (collectively, "Defendants"), the owners and/or operators of Rancho Sierra Vista Stables ("RSV Stables" or the "Facility"). The Facility stables approximately 370 horses, which are present for the majority of the year.

3. Defendants have operated the Facility in violation of the Clean Water Act by failing to obtain permit coverage for the discharge of pollutants from a Medium Concentrated Animal Feeding Operation ("CAFO").

4. Failure to obtain mandatory permits for activities at the Facility violates the Clean Water Act's prohibition on unpermitted discharges of pollutants into Waters of the United States. These failures are demonstrated by Defendants' discharges of horse manure and bedding, sediment, trash, fertilizers, rubberized horse footing, and other "non-storm water" into Trabuco Creek and onsite federal waters, and the discharge of polluted storm water that comes into direct contact with hundreds of stabled horses directly into Trabuco Creek.

5. The Clean Water Act enables non-profit organizations such as Orange County Coastkeeper to file lawsuits to enforce the Clean Water Act. 33 U.S.C. § 1365.

6. Based upon its investigation to date, Coastkeeper alleges that Defendants are responsible for at least 1,825 violations of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

7. Defendants' acts and omissions have harmed, and continue to harm, both the mission of Plaintiff Orange County Coastkeeper and the interests of its members who

**COMPLAINT**                                                     **Case No. 8:20-cv-1993**

use Trabuco Creek, San Juan Creek downstream of the Facility, and Doheny State Beach, where the San Juan Creek meets the Pacific Ocean.

8. Coastkeeper seeks declaratory and injunctive relief, as well as civil penalties, to end the unlawful acts and omissions of Defendants that continue to cause irreparable damage to water quality. Coastkeeper also seeks recovery of reasonable costs of suit, including attorney, witness, expert, and consultant fees, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d).

## II.    JURISDICTION AND VENUE

9. This is a citizen enforcement action brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*, more commonly called the Clean Water Act (the "Clean Water Act" or the "Act"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief under the Constitution and laws of the United States).

10. Coastkeeper sent a letter by certified mail to Defendants on February 10, 2020 (the "Notice Letter"). In the Notice Letter, Coastkeeper notified Defendants of their violations of the Clean Water Act and of Coastkeeper's intention to file suit for such violations after sixty (60) days as required by 40 C.F.R. § 135.2(a)(1) (Mar. 19, 1991).

11. The Notice Letter was also sent to the necessary state and federal regulatory agencies as required by Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).

12. More than sixty (60) days have passed since the Notice Letter was sent to Defendants and the regulatory agencies.

13. Coastkeeper is informed and believes that the federal or state agencies have neither commenced nor are diligently prosecuting any action to redress the violations alleged in the Notice Letter and in this Complaint. *See* 33 U.S.C. § 1365(b)(1)(B).

14. This action is not barred by any prior administrative penalty under Section

**COMPLAINT**                                                        **Case No. 8:20-cv-1993**

309(g) of the Clean Water Act, 33 U.S.C. § 1319(g).

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Coastkeeper's claims occurred in this judicial district, and under 33 U.S.C. § 1365(c)(1) because the sources of the violations described in this Complaint are located within this judicial district.

16.     Plaintiff seeks relief from Defendants' violations of the procedural and substantive requirements of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

## III.   PARTIES

### A.   Orange County Coastkeeper

17.     Plaintiff Orange County Coastkeeper ("Coastkeeper" or "Plaintiff") is a non-profit public benefit corporation organized under the laws of the State of California. Coastkeeper's office is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

18.     Coastkeeper has over 1,400 members who live and/or recreate in and around Orange County, including at Trabuco Creek, San Juan Creek, and Doheny State Beach. Coastkeeper's mission is to protect the region's water resources so they are swimmable, drinkable, and fishable for present and future generations. To further its mission, Coastkeeper actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

19.     In addition, Coastkeeper's members use and enjoy Trabuco Creek to swim, birdwatch, picnic, fish, hike, wade, bike, horseback ride, and conduct scientific study and research, and/or for aesthetic enjoyment in and around these waters.

20.     Coastkeeper's members use and enjoy the coast near the San Juan Creek Mouth (downstream of Trabuco Creek) and Doheny State Beach to sail, swim, boat, kayak, windsurf, birdwatch, picnic, fish, paddle, standup paddleboard, surf, wade, and conduct scientific study and research, and/or for aesthetic enjoyment in and around these waters.

**COMPLAINT**                                                    **Case No. 8:20-cv-1993**

21.     Defendants' actions individually, collectively, and in culmination with the activities of other landowners adjacent to Trabuco Creek, result in numerous injuries to Coastkeeper's interests, such as: loss, destruction, or damage to wetlands and waterways; diminished aesthetic enjoyment; loss of open space and habitat for wildlife, including wading birds and federally protected species like Southern California Coast Steelhead; degraded water quality; and diminished quality of life.

22.     Defendants' failure to comply with the procedural and substantive requirements of the Clean Water Act negatively affects and impairs Coastkeeper's members' use and enjoyment of these waters.

23.     The interests of Coastkeeper's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Clean Water Act. Continuing the commission of the acts and omissions alleged in this Complaint will irreparably harm Coastkeeper's members, for which harm they have no plain, speedy, or adequate remedy at law.

24.     Coastkeeper's members will continue to be harmed until Defendants bring their activities into compliance with the law.

25.     The relief sought herein will redress the harms to Coastkeeper caused by Defendants' activities.

**B.     Rancho Sierra Vista**

26.     Rancho Sierra Vista is an active California corporation with its principal place of business located at 31441 Avenida De La Vista, San Juan Capistrano, CA 92675.

27.     Rancho Sierra Vista owns the Facility.

28.     The Registered Agent for the Facility is Patricia Garrison, located at the same address as RSV.

29.     At all times relevant to this Complaint, RSV has owned, and is legally responsible for, the Facility.

///

**COMPLAINT**                                                    **Case No. 8:20-cv-1993**

C.    **Rancho HHO Land Corporation**

30.    Defendant Rancho HHO Land Corporation is an active California corporation for the purposes of property ownership.

31.    The registered agent for service of process is Steve Driscoll, located at 100 Pacifica Street, Ste 130, Irvine, CA 92618.

32.    Based on information available to Coastkeeper, Coastkeeper alleges that Rancho HHO Land Corporation is the property owner of 31441 Avenida De La Vista, San Juan Capistrano, CA 92675 – the land upon with RSV Stables operates its equestrian stabling business.

33.    Patricia Garrison is the president of Rancho HHO Land Corporation.

34.    Patricia Garrison is also an officer of RSV.

35.    Coastkeeper alleges that Patricia Garrison, as the President of Rancho HHO Land Corporation and an officer of RSV, has knowledge and control of the operations occurring at RSV Stables.

36.    Collectively, RSV and Rancho HHO Land Corporation are the owners and/or operators of the Facility and responsible parties under the Clean Water Act.

IV.    **FACTUAL BACKGROUND**

A.    **Rancho Sierra Vista Stables**

*Activities*

37.    Coastkeeper alleges that RSV provides equestrian stabling, riding rings, access to equestrian trails, and other related services.

38.    Based on publicly available information obtained from OC Animal Care, an agency of the County of Orange, RSV has stables and is permitted for up to 370 horses.

39.    Coastkeeper alleges that the Facility stables over 150 horses for more than 45 days in any 12-month period.

40.    Coastkeeper alleges that no crops are sustained at the Facility, and horses are not permitted to graze.

41.    Based on satellite images of the Facility and the general topography of the

**COMPLAINT**                                    **Case No. 8:20-cv-1993**

area, and based upon documents obtained from the City of San Juan Capistrano, Coastkeeper alleges that storm water passes through stables and/or animal walkways, coming into contact with manure and other pollutants, and then flows into at least one storm drain that empties into the adjacent Trabuco Creek.

42.    Based on information and belief, Coastkeeper also alleges other that man-made devices convey storm water from the Facility to Trabuco Creek.

### Non-storm Water and Storm Water Pollution

43.    Coastkeeper alleges that Defendants have been, and are continually, discharging pollutants into Trabuco Creek.

44.    The discharged pollutants include, but are not limited to, "non-storm water," such as horse manure, bedding, sediment, equine footing, trash, and other materials associated with equine operations, as well as polluted run-off and storm water.

45.    Based on information available to Coastkeeper, it alleges that when it rains, storm water falls onto the Facility and runs through riding rings, stabling areas, and horse walkways – coming into direct contact with manure, bedding, footing, feed, and trash before discharging to Trabuco Creek.

46.    Water flows generally towards the bank of Trabuco Creek, carrying with it pollutants including bacteria, nitrogen, phosphorus, and trash.

47.    Coastkeeper believes and thereon alleges that each time it rains at the Facility, polluted water is discharged from the Facility without a permit.

48.    Unlawful discharges will occur each time it rains until such a time as the Facility gains NPDES permitting and implements an approved Nutrient Management Plan. Each discharge of pollutants into waters of the United States without an NPDES permit a CAFO is a violation of Section 301 of the Clean Water Act, 33 U.S.C. §1311.

49.    Coastkeeper is further informed and believes that pollutants may also be discharged from the Facility during dry weather.

///

///

**COMPLAINT**                                                    **Case No. 8:20-cv-1993**

50.   Based upon information obtained from the South Orange County Wastewater Authority, Coastkeeper is informed, believes, and thereon alleges that the Facility discharges process wastewater from its horse wash racks directly into Trabuco Creek or storm drains that convey process wastewater to Trabuco Creek.

51.   Coastkeeper is informed, believes, and thereon alleges that process wastewater from the wash racks is routinely discharged, and is reasonably likely to continue to be discharged, directly into Trabuco Creek in the future.

52.   Coastkeeper further alleges that pollutants discharged from the Facility including, but not limited to, sediment, manure, feed bags, and trash from human activities at the Facility may further enter Trabuco Creek incidentally due to lack of implemented Best Management Practices (BMPs) to prevent such non-storm water discharges.

53.   Coastkeeper alleges that discharges of these non-stormwater pollutants are reasonably likely to continue for as long as the Facility operates without an NPDES permit.

**B.    Trabuco Creek**

*Description*

54.   Defendants are discharging pollution from the Facility into Trabuco Creek.

55.   Trabuco Creek is a water of the United States subject to the protections of the Clean Water Act. 33 U.S.C. § 1362(7).

56.   Trabuco Creek is a 22-mile primary tributary of San Juan Creek with its headwaters originating in the Santa Ana Mountains, flowing west and southwest through San Juan Capistrano, before entering San Juan Creek.

57.   San Juan Creek is a water of the United States subject to the protections of the Clean Water Act.

58.   The San Juan Creek watershed encompasses a drainage of approximately 176 square miles and extends along an East-West axis from the Cleveland National Forest in the Santa Ana Mountains to the Pacific Ocean at Doheny State Beach near

**COMPLAINT**                                      **Case No. 8:20-cv-1993**

Dana Point Harbor.[1]

*Environmental Resources and Threats to Water Quality*

59.     Trabuco Creek and San Juan Creek support a wide variety of flora and fauna, including endangered species such as the Pacific pocket mouse, the Southern California Coast Steelhead, the Quino checkerspot butterfly, the southwestern willow flycatcher, and many other species.

60.     Portions of Trabuco Creek and San Juan Creek have specifically been identified as critical habitat for a Southern California Coast Steelhead Biogeographic Population Group.

61.     The California Regional Water Quality Control Board, San Diego Region (the "Regional Board") issued the *San Diego Basin Water Quality Control Plan* (the "Basin Plan"). The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. Pursuant to its authority over designated water bodies, the Regional Board has designated several beneficial uses for Trabuco Creek, San Juan Creek, and its mouth at Doheny State Beach.[2]

62.     Beneficial uses are intended to represent the purposes of the water body that are specifically protected by the Clean Water Act. When those uses are not attained, the Regional Board designates the water body as "impaired" under Section 303(d) of the Clean Water Act.

63.     In this regard, the receiving waters of pollution from the Facility are impaired.

---

[1] U.S. Army Corps of Engineers, South Pacific Div., *Record of Decision for Revoking the Use of Selected Nationwide Permits within the San Juan Creek/Western San Mateo Creek Watersheds for the Special Area Management Plan Orange County, Cal.*, 1 (July 2010).
[2] According to the Basin Plan, Trabuco Creek's existing beneficial uses include: agricultural supply, industrial service supply, water contact recreation, non-contact water recreation, warm freshwater habitat, cold freshwater habitat, wildlife habitat. San Juan Creek's existing beneficial uses include: agricultural supply, industrial service supply, water contact recreation, non-contact water recreation, warm freshwater habitat, cold freshwater habitat, wildlife habitat. Likewise, the beneficial uses on the San Juan Creek Mouth, where San Juan Creek meets the Pacific Ocean, includes contact water recreation, non-contact water recreation, wildlife habitat, rare, threatened, or endangered species, marine habitat, migration of aquatic organisms, and shellfish harvesting. *Water Quality Control Plan, San Diego Region*, Regional Water Quality Control Board, San Diego Region, Tables 2-2, 2-3 (updated January 15, 2020).

9

**COMPLAINT**                                                      **Case No. 8:20-cv-1993**

64.     According to the 2016 303(d) List of Impaired Water Bodies, Trabuco Creek is impaired for pollutants including indicator bacteria, Malathion, nitrogen, phosphorus, and benthic community effects.[3]

65.     San Juan Creek is impaired for pollutants including, but not limited to, indicator bacteria, phosphorus, total nitrogen as N, toxicity, DDE, dissolved oxygen, and selenium.[4]

66.     The San Juan Creek Mouth is impaired for pollutants including cadmium, copper, indicator bacteria, nickel, and nitrogen as ammonia (total ammonia).

67.     The Pacific Ocean shoreline at the mouth of San Juan Creek, 1000 feet south of San Juan Creek, and at North Doheny State Park Campground is also impaired for indicator bacteria.

68.     The discharge of storm water carrying the byproducts of the Facility, including horse waste, bedding material, feed, metals, trash, and other materials are contributing to, and threatening, Trabuco Creek and downstream receiving waters.

69.     The Clean Water Act requires California to establish a total maximum daily load ("TMDL") for impaired waterbodies on its 303(d) list. A TMDL is necessary when the technology-based effluent limits and other pollution control requirements "are not stringent enough to implement any water quality standard applicable to such waters."[5] A TMDL is the sum of the individual waste load allocations ("WLA") for point sources and load allocations ("LA") for non-point sources and natural background.[6] A WLA is a "portion of a receiving water's loading capacity that is allocated to one of its existing or future point sources of pollution."[7] Any NPDES permit issued for waters subject to a TMDL must include effluent limitation or standards necessary to achieve water quality standards established under Section 303.[8] Where a TMDL has been approved by the

---

[3] Integrated Report, *available at*:
*https://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2014_2016.shtml*.
[4] *Id.*
[5] 33 U.S.C. § 1313(d)(1)(A); 40 C.F.R. § 130.7(b)(1).
[6] 40 C.F.R. § 130(i).
[7] 40 C.F.R. § 130.2(h).
[8] 33 U.S.C. § 1311(b)(1)(C); 40 C.F.R. § 122.44(d)(1).

**COMPLAINT**                                                        **Case No. 8:20-cv-1993**

EPA, NPDES permit limits must be consistent with the assumptions and requirements of the TMDL's WLAs.[9]

70.    On February 10, 2010 the Regional Board adopted Resolution No R9-2010-0001, an amendment revising its Basin Plan to incorporate the Revised Total Maximum Daily Loads for Indicator Bacteria, Project I – Twenty Beaches and Creeks in the San Diego Region (Including Tecolote Creek) (the "Twenty Beaches TMDL"). The Twenty Beaches TMDL became effective on April 4, 2011. The Regional Board included San Juan Creek, San Juan Creek (mouth) and the Pacific Ocean shoreline near San Juan Creek into the Twenty Beaches TMDL from the Lower San Juan Creek Hydrologic Sub Area (HSA).[10]

71.    The Regional Board identified CAFOs as point source dischargers responsible for causing or contributing to bacteria impairments in Twenty Beaches TMDL.[11] Unlike other point source contributors, CAFOs were assigned a zero WLA.[12] Consequently, CAFOs are not allowed to discharge bacteria in dry or wet weather under the terms of the Twenty Beaches TMDL.[13]

72.    On November 6, 2018, the State Board amended the Industrial General Permit Order 2014-0057-DWQ, as amended by Order 2015-0122-DWQ, to incorporate the Twenty Beaches TMDL, making its requirements applicable to industrial storm water dischargers regulated by the permit.[14]

# V.    STATUTORY AND REGULATORY BACKGROUND

## A.    The Clean Water Act, State Regulation, and Relevant Permitting Provisions

73.    Congress passed the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a),

---

[9] 40 C.F.R. §§ 122.44(d)(1)(vii)(B), 130.12(a).
[10] *See* R9-2010-0001, Attachment A, A1.
[11] *See* R9-2010-0001, Attachment A, A40.
[12] *Id.*
[13] *Id.* at A45.
[14] *See* Order 20XX-XXXX-DWQ, Section VII., Attachment E.

**COMPLAINT**                                                    **Case No. 8:20-cv-1993**

and with the "interim goal" that wherever attainable, "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water achieved by July 1, 1983." 33 U.S.C. § 1251(a)(2).

74.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with a permit issued pursuant to Clean Water Act Section 402. 33 U.S.C. §§ 1342.

75.    Section 402 of the Clean Water Act establishes National Pollutant Discharge Elimination System ("NPDES") permits issued by EPA, or an EPA-delegated state, to achieve the goals stated in Section 301(a) of the Clean Water Act., 33 U.S.C. §§ 1311(a) and 1342(b).

76.    EPA has delegated its NPDES permitting authority to the State of California.

77.    The California Water Code vests the State Water Resources Control Board (the "State Board") and the State's nine regional water quality control boards with primary responsibility for regulating state water quality. Cal. Water Code §§ 13001, 13050(a)-(b), 13200. The Regional Board identified above is one of the nine regional boards. The San Juan Creek watershed, and the Pacific Ocean drainages from this watershed, fall within its jurisdiction. *Id.* § 13200(f).

78.    Each violation of an NPDES permit – and each discharge of a pollutant that is not authorized by an NPDES permit – is a violation of the Clean Water Act and its implementing regulations and is grounds for enforcement actions, including citizen enforcement seeking civil penalties. 33 U.S.C. §§ 1311(a), 1342(a), 1365(a), 1365(f)(6); 40 C.F.R. § 122.41(a) (Dec. 21, 2015).

**B.    NPDES Permits**

    **1.    Concentrated Animal Feeding Operation Permit**

79.    Under the Clean Water Act, a "point source" includes a "concentrated animal feeding operation" from which pollutants are or may be discharged. 33 U.S.C. § 1362(14).

**COMPLAINT**                                                                                    **Case No. 8:20-cv-1993**

80.     To be considered a CAFO, a facility must satisfy a two-part test. First, the facility must meet the definition of an animal feeding operation ("AFO"). 40 C.F.R. § 122.23 (Jul. 30, 2012). Second, the facility must confine a certain number of animals, which varies by species. *Id.*

81.     An AFO is defined as a lot or facility where the following conditions are met: "(i) Animals (other than aquatic animals) have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12–month period, and (ii) Crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility." 40 C.F.R. § 122.23(b)(1)(i-ii) (Jul. 30, 2012).

82.     According to EPA, if an animal is at a facility for a portion of the day, it counts as a full day.[15]

83.     The 12-month period is any 12-month period and need not correspond with a calendar year.[16]

84.     If a facility meets the definition of an AFO, the next step is to determine whether it has the requisite number of animals present at the facility to be classified as a CAFO. CAFOs may be further categorized as Large or Medium CAFOs based on the number of animals at a facility.

85.     For a horse AFO, 500 or more horses must be present at the facility to be classified as a Large CAFO. 40 C.F.R. § 122.23(4)(vi) (Jul. 30, 2012).

86.     A Medium horse CAFO is any facility with 150-499 horses that also either: (1) discharges "into waters of the United States through a man-made ditch, flushing system, or other similar man-made device"; or (2) "[p]ollutants are discharged directly into waters of the United States which originate outside of and pass over, across, or through the facility or otherwise come into direct contact with the animals confined in the operation." 40 C.F.R. § 122.23(6) (Jul. 30, 2012).

---

[15] *NPDES Permit Writers' Manual for CAFOs.* https://www.epa.gov/sites/production/files/2015-08/documents/cafo_permitmanual_chapter2.pdf. Chapter 2-2. Accessed April 24, 2017.
[16] *Id.*

**COMPLAINT**                                                            **Case No. 8:20-cv-1993**

87.     For facilities smaller than a Medium CAFO, the Regional Board may still designate any AFO as a CAFO if it determines that the AFO is a significant contributor of pollutants to waters of the United States. 40 C.F.R. § 122.23 (Jul. 30, 2012).

88.     Once an AFO is defined as a CAFO, the NPDES requirements for CAFOs apply to all animals in confinement at the operation and all manure, litter, and process wastewater generated by those animals or the production of those animals. *See* 40 C.F.R. § 122.23(a) (Jul. 30, 2012).

89.     Manure is defined to include "manure, bedding, compost, and raw materials or other materials comingled with manure or set aside for disposal." 40 C.F.R. § 122.23(b)(5) (Jul. 30, 2012).

90.     Every discharge of pollutants from a CAFO into waters of the United States without an NPDES permit is a violation of Section 301 of the CWA, 33 U.S.C. § 1311. *See also* 40 C.F.R. §§ 122.23(d)(1), 122.23(f) (Jul. 30, 2012).

91.     Like other NPDES permits, CAFO permits must contain effluent limitations, monitoring and reporting requirements, record-keeping requirements, special conditions, and standard conditions to ensure the CAFO is complying with the Clean Water Act.[17]

92.     Effluent limitations are defined as "any restriction established by the Administrator on quantities, rates, and concentrations of chemical, physical, biological and other constituents which are discharged from point sources" into waters of the United States. 40 C.F.R. § 401.11(i) (Aug. 28, 2015).

93.     As explained below, a CAFO permit must include both technology-based effluent limitations as well as more stringent water quality-based effluent limitations when water quality standards are not being met.

94.     The Clean Water Act requires all NPDES point sources to achieve compliance with technology-based effluent limitations. 33 U.S.C. § 1311(b).

---

[17] *NPDES Permit Writers' Manual for CAFOs*, https://www.epa.gov/npdes/npdes-permit-writers-manual-concentrated-animal-feeding-operations, Ch. 4 (Last Accessed October 16, 2020).

**COMPLAINT**                                                           **Case No. 8:20-cv-1993**

95.    Technology-based effluent limitations for CAFOs must address all of the discharges from a CAFO. 40 C.F.R. § 122.42(e) (Dec. 21, 2015).

96.    CAFO permits must include limits for process wastewater discharges from the CAFO's production area and land application area.

97.    Process wastewater is defined as water directly or indirectly used in operation of the AFO for activities including: washing, cleaning, or flushing AFO facilities; washing or spray cooling animals; dust control; or any water that comes into contact with any raw material, products, or byproducts including manure, litter, feed, milk, or bedding. 40 C.F.R. §§ 122.23(b)(7) (Jul. 30, 2012), 412.2(d) (Feb. 12, 2003).

98.    The discharge of manure, litter or process wastewater to waters of the United States from a CAFO is subject to NPDES permit requirements. 40 C.F.R. §§ 122.23(e), 122.23(b)(3) (Jul. 30, 2012).

99.    A CAFO can only discharge manure, litter or process wastewater from land areas under its control due to precipitation events if those materials are applied in accordance with a site-specific, documented nutrient management plan. 40 C.F.R. §§ 122.23(e)(1), (2) (Jul. 30, 2012).

100.   Similarly, CAFO permits require implementation of a site-specific nutrient management plan that, at a minimum, contains best management practices necessary to meet enumerated requirements and applicable effluent limitations and standards. 40 C.F.R. § 122.42(e)(1) (Dec. 21, 2015). Those enumerated requirements include: (1) manure and process wastewater storage; (2) management of mortalities; (3) diversion of clean water from the production area; (4) prevention of direct contact of confined animals to waters of the United States; (5) chemical and contaminant management of manure, litter, process wastewater, storm water storage or treatment; (6) conservation practices; (7) protocols for testing manure, litter, process wastewater, and soil; (8) protocols for applying manure, litter, or process wastewater in accordance with the site-specific nutrient management plan; and (9) record keeping. *Id.* The nutrient management

**COMPLAINT**                                                      **Case No. 8:20-cv-1993**

plan's terms are enforceable effluent limitations that must be included in the permit.[18]

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### AGAINST ALL DEFENDANTS

**Unpermitted Discharges From A Medium Concentrated Animal**

**Feeding Operation Without An NPDES Permit.**

**33 U.S.C. §§ 1311(a), 1342(p), 1365(a) and 1365(f)**

101.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

102.   RSV is an owner of RSV Stables.

103.   RSV is an operator of the Facility.

104.   Rancho HHO Land Corporation owns the land upon which the Facility is located.

105.   Rancho HHO Land Corporation is an owner and/or operator of RSV Stables.

106.    Collectively, RSV and Rancho HHO Land Corporation are the owners and/or operators of the Facility.

107.   Coastkeeper is informed, believes, and thereon alleges that horses are fed and/or maintained at the Facility.

108.   Coastkeeper is informed, believes, and thereon alleges that horses are fed and/or maintained at the Facility for more than 45 days in a 12-month period.

109.   Coastkeeper is informed, believes, and thereon alleges that horses are fed and/or maintained at the Facility approximately every day.

110.   Coastkeeper is informed, believes, and thereon alleges that there are no crops, vegetation, forage, or post-harvest residues sustained over any portion of the Facility, and horses are not permitted to openly graze at the Facility.

111.   Horses are generally confined to their stables unless they are being

---

[18] *Waterkeeper Alliance v. EPA*, 399 F.3d 486, 502 (2d Cir. 2005).

**COMPLAINT**                                                                 **Case No. 8:20-cv-1993**

exercised, washed, or ridden by their owners.

112. RSV Stables is an Animal Feeding Operation that confines equines.

113. Coastkeeper is informed, believes, and thereon alleges that for the past five years, the Facility has confined approximately 370 horses year-round.

114. Coastkeeper is informed, believes, and thereon alleges that for the past five years, the Facility has confined over 150 horses on a daily basis.

115. Coastkeeper is informed, believes, and thereon alleges that at all relevant times, storm water that falls on the Facility is discharged through manmade ditches, storm drains, or other manmade devices directly, or the functional equivalent of directly, into Trabuco Creek.

116. Coastkeeper is informed, believes, and thereon alleges that at all relevant times, storm water flows over and across stabling areas, horse walkways, coming into contact with manure, bedding, and other pollutants, and flows into Trabuco Creek.

117. Coastkeeper is informed, believes, and thereon alleges that RSV Stables is a Medium Concentrated Animal Feeding Operation.

118. Coastkeeper is informed, believes, and thereon alleges that pollutants from the Facility have been and are continually discharged to Trabuco Creek, a water of the United States. Pollutants include, but are not limited to, non-storm water, such as horse manure, bedding, sediment, equine footing, trash, and other pollutants associated with equine operations, as well as polluted storm water.

119. Coastkeeper is informed, believes, and thereon alleges that the Facility discharges process wastewater from horse wash racks into Trabuco Creek.

120. Coastkeeper is informed, believes, and thereon alleges that process wastewater from horse wash racks continues to be discharged into Trabuco Creek whenever the wash racks are in use.

121. Coastkeeper is informed, believes, and thereon alleges that Defendants apply process wastewater to the Facility riding rings, and other land, without having a site-specific nutrient management plan.

**COMPLAINT**                                                      **Case No. 8:20-cv-1993**

122. Coastkeeper is informed, believes, and thereon alleges that the Facility operates without sufficient manure and process wastewater storage.

123. Coastkeeper is informed, believes, and thereon alleges that the Facility operates without proper diversion of clean water from the production area.

124. Plaintiff is informed, believes, and thereon alleges the Facility operates without chemical and contaminant management of manure, litter, process wastewater, and treatment.

125. Plaintiff is informed, believes, and thereon alleges the Facility operates without protocols for testing manure, litter, process wastewater, and soil.

126. Plaintiff is informed, believes, and thereon alleges the Facility operates without protocols for applying manure, litter, or process wastewater in accordance with a site-specific nutrient management plan.

127. Plaintiff is informed, believes, and thereon alleges the Facility operates without proper record keeping required by a site-specific nutrient management plan.

128. Coastkeeper alleges that Defendants do not have NPDES permit coverage for the operation of the Facility as a Medium CAFO.

129. Every day the Facility operates without an NPDES permit for operation of a CAFO is a separate and distinct violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

130. Defendants have been in continuous violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, since at least February 10, 2015.

131. By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the Clean Water Act pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

132. An action for injunctive relief under the Clean Water Act is authorized by Section 505(a) of the Act. 33 U.S.C. § 1365(a). The continued commission of the acts and omissions alleged above irreparably harms Coastkeeper and the citizens of the State

**COMPLAINT**                                      **Case No. 8:20-cv-1993**

1    of California, for which harm there is no plain, speedy, or adequate remedy at law.

2        133.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a)

3    because an actual controversy exists as to the rights and other legal relations of the

4    Parties.

5        WHEREFORE, Coastkeeper prays for judgment against the Defendants as set

6    forth hereafter.

7

8    **VII.   RELIEF REQUESTED**

9        218.   Wherefore, Plaintiff Coastkeeper respectfully requests that this Court grant

10   the following relief:

11       a.     A court order declaring Defendants to have violated, and to be in

12   violation of, Section 301 of the Clean Water Act, 33 U.S.C. § 1311, for their failure

13   to obtain permit coverage as a Medium CAFO.

14       b.     A court order requiring Defendants to obtain and comply with an

15   NPDES Permit for discharges from a Medium CAFO.

16       c.     A court order assessing civil monetary penalties for each violation of

17   the Act at $37,500 per day per violation for violations occurring from March 31,

18   2012 through November 2, 2015, and $55,800 per day per violation for violations

19   that occurred after November 2, 2015 and assessed on or after January 13, 2020, as

20   authorized by 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for

21   Inflation, 40 C.F.R. § 19.4 (Jan.15, 2017);

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**COMPLAINT**                                          **Case No. 8:20-cv-1993**

1       d.  A court order awarding Plaintiff Coastkeeper its reasonable costs of
2  suit, including attorney, witness, expert, and consultant fees, as authorized by Section
3  505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and
4       e.  Any other relief as this Court may deem appropriate.

Dated:  October 16, 2020  Respectfully submitted,

ORANGE COUNTY COASTKEEPER

   /s/   Sarah J. Spinuzzi
Sarah Spinuzzi
Attorney for Plaintiff
Orange County Coastkeeper

**COMPLAINT**  **Case No. 8:20-cv-1993**