Sarah Spinuzzi (SBN #305658) ORANGE
COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Tel:   714.850.1965
Email:sarah@coastkeeper.org

Attorney for Plaintiff
ORANGE COUNTY COASTKEEPER

S. Wayne Rosenbaum (SBN #182456)
ENVIRONMENTAL LAW GROUP LLP
225 Broadway, Suite 1900
San Diego, CA 92101
Tel:   619.231.5858
Email:swr@envirolawyer.com

Attorney for Defendants
RANCHO SIERRA VISTA,
RANCHO HHO LAND CORPORATION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>　　　　Plaintiff,<br>　vs.<br><br>RANCHO SIERRA VISTA, a California Corporation; RANCHO HHO LAND CORPORATION, a California Corporation<br><br>　　　Defendants, | **Civil Case No. :**<br>**8:20-cv-01993JVS(KESx)**<br><br>**CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONSENT DECREE

The following Consent Decree is entered into by and between Orange County Coastkeeper ("Coastkeeper" or "Plaintiff") and Rancho Sierra Vista, a California Corporation ("RSV") and Rancho HHO Land Corporation, a California Corporation ("Financial Guarantor" and, together with RSV, "Defendants"). The entities entering this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS**, Coastkeeper's mission is to protect the region's water resources so they are swimmable, drinkable, and fishable for present and future generations;

**WHEREAS**, RSV operates an equestrian boarding facility ("Facility") on the property located at 31441 Avenida De La Vista in the City of San Juan Capistrano (the "City"), State of California (the "Property") where it stables approximately 335 horses year-round;

**WHEREAS,** Financial Guarantor is the owner of the Property where RSV operates its equestrian stabling business;

**WHEREAS,** the City owns and operates a municipal storm drain that transects the Property;

**WHEREAS,** the Property is serviced by two privately owned historic storm water conveyances for which the parties have been unable to identify a functioning surface outfall;

**WHEREAS**, on or about February 10, 2020, Coastkeeper sent a letter to Defendants of Coastkeeper's intention to file suit after the expiration of sixty (60) days for certain alleged violations of the federal Water Pollution Control Act pursuant to 40 C.F.R. § 135.2 ("Notice Letter") attached hereto as **Exhibit A**.

1

**WHEREAS,** Coastkeeper alleges that RSV's operations at the Facility result in discharges of pollutants to Trabuco Creek, the main tributary to San Juan Creek, which discharges to the San Juan Creek Mouth and the Pacific Ocean ("Receiving Waters"), and further contends those discharges are regulated by the Clean Water Act, Sections 301(a), 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Financial Guarantor has agreed to act as the financial guarantor for monetary obligations of RSV set forth in this Consent Decree;

**WHEREAS**, on April 10, 2020, Coastkeeper and Defendants executed a 30-day Tolling Agreement to facilitate dry and wet weather inspections of the facility and discuss engineering solutions to evaluate and resolve Coastkeeper's Clean Water Act allegations;

**WHEREAS**, On April 10, 2020, in a letter attached hereto as **Exhibit B**, the San Diego Regional Water Quality Control Board (RWQCB) identified RSV as a Medium Confined Animal Feeding Operation (CAFO) and directed RSV to file a Notice of Intent (NOI) through the State Water Board's Stormwater Multiple Application & Tracking System (SMARTS) to obtain coverage under the Statewide General Permit for Storm Water Discharges Associated with Industrial Activities, Order No. 2014-0057-DWQ as amended ("Industrial General Permit" or "IGP") and develop and implement a site-specific Nutrient Management Plan (NMP) pursuant to subdivision 40 C.F.R. § 122.42(e), or demonstrate a "No Discharge" condition, and apply for a Notice of Non-Applicability (NONA) under XX.C of the IGP;

**WHEREAS**, on May 8, 2020, Coastkeeper and Defendants executed a 30-day extension of their Tolling Agreement;

**WHEREAS**, on June 16, 2020, Coastkeeper and Defendants executed a second 30-day extension of their Tolling Agreement;

**WHEREAS**, on October 16, 2020, Plaintiff filed a complaint against Defendants in the United States District Court, Central District of California (Civil Case No. : 8:20-

2

cv-01993), alleging violations of § 301(a) and § 402 of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the IGP at the Facility (the "Complaint");

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest, and therefore choose, to resolve Coastkeeper's allegations in the Notice Letter through settlement and entry of this Consent Decree to avoid the cost and uncertainties of litigation;

**WHEREAS**, Plaintiff alleges RSV to be in violation of the substantive and procedural requirements of the IGP and the Clean Water Act with respect to the Facility;

**WHEREAS**, RSV denies all allegations in the Notice Letter and Complaint relating to the Facility;

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by RSV pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

**1.** The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

**2.** Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within the Central District of California;

**3.** The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

**4.** Plaintiff has standing to bring this action;

**5.** The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.    OBJECTIVES**

**6.** It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in their Complaint. In light of these objectives and as set forth fully below, RSV agrees to comply with all applicable provisions of this Consent Decree, the IGP, a RWQCB approved Nutrient Management Plan (NMP), and all applicable provisions of the Clean Water Act. Specifically, RSV agrees to comply with Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations set forth in the IGP in the industrial and production areas.

**II.    AGENCY REVIEW AND TERM OF CONSENT DECREE**

**7.** Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively, the "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to RSV. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

**8.** The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree. If, by the end of the 45-day review period referenced in paragraph 7, *supra*, the Federal Agencies offer no objection, the Settling Parties agree to request immediate entry of this Consent Decree by the Court and if, after fourteen (14) days, the Court has not entered the Consent Decree, the Settling Parties

4

agree that any party to this agreement may request a hearing before the Court to seek entry of the Consent Decree.

**9.**   This Consent Decree shall terminate three (3) years after the Effective Date ("Termination Date"), unless tolled by delays as set forth in Paragraph 51 or there is a prior ongoing, unresolved dispute regarding RSV's compliance with this Consent Decree.

## III.   POLLUTION CONTROL REQUIREMENTS

### A.   Storm Water Pollution Reduction Measures

**10.**   Should RSV submit a valid Notice of Non-Applicability ("NONA") as further described in Section XX.C of the IGP the provisions of Section III of this Consent Decree shall not apply.

**11.**   The storm water pollution control measures required by this Consent Decree shall be designed and operated to comply fully with the requirements of the IGP and RSV's NMP approved by the RWQCB.

**12.**   RSV agrees to continue to maintain seals on any inlets to the City storm drain on the Property in a manner that prevents stormwater and non-stormwater discharges from entering the City storm drain in a manner reasonably acceptable to RSV, Plaintiff, and the City.

**13.   Structural BMPs**

**13.1.**  RSV agrees to implement structural BMPs that will retain or infiltrate storm water from the ten year/24-hour storm event from the Production Area, any commingled non-Production Area water, and process wastewater as depicted in **Exhibit C**.

**13.2.**  By April 1, 2021, RSV will submit the following storm water retention reports:

**13.2.1.**   Technical Report 1: Evaluates the Facility's capability to capture and retain storm water and all process wastewater from the Production Area and any commingled non-Production Area water to prevent storm water discharges from the Facility. The volumes used to

5

evaluate the capture and retention capabilities will be based on the ten year/twenty-four hour rain event for the property as determined by NOAA. This report will be certified by a California Professional Engineer ("P.E.").

**13.2.2.**    Based on the results of Technical Report 1, a storm water retention BMP plan shall be developed to either maintain existing capacity or add any necessary additional BMPs required to meet the 10 year/twenty-four hour rain event design capacity. The BMP plan shall be certified by a California Professional Engineer ("P.E.").

**13.3.**  The storm water retention BMP plan must also include either a plan as described in Paragraph 13.4 to monitor infiltrated storm water and groundwater flow direction to determine whether infiltrated storm water is the functional equivalent of a point source discharge of pollutants to Trabuco Creek[1], or in the alternative, a written report(s) from the appropriate qualified professional(s) that it is not reasonably likely that the functional equivalent of a point source connection between the property and Trabuco Creek exists in which case the provisions of 13.4 shall not apply. Should Coastkeeper disagree with the results of the studies, Coastkeeper shall have the burden to provide substantial evidence that contravenes the conclusions of the reports.

**13.3.1.**    Technical Report 2: Evaluates whether Trabuco Creek is a "gaining" or "losing" stream at the Facility and adjacent property. The results of this study will determine whether the hydrological configuration between Trabuco Creek and the Facility is capable of

---

[1] The term "functional equivalent" shall have the same meaning as it does in *County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020).  The seven factors outlined in *County of Maui* shall be used to determine whether a "functional equivalent" is likely to exist in this case.

producing the "functional equivalent" of a discharge to Trabuco Creek as that term is defined in *County of Maui v. Hawaii Wildlife Fund*. Said report shall be prepared by an appropriate qualified professional. If the professional performing Technical  Report 2 reasonably concludes that Trabuco Creek is a "losing stream" adjacent to the Facility throughout the year, the results will be deemed conclusive and no further evaluations will be required.  If the professional conducting Technical Report 2 is unable to reasonably conclude that Trabuco Creek is a losing stream, RSV will commission the preparation of Technical Report 3.  The report shall be prepared by a hydrogeologist.

13.3.2.   Technical Report 3: Provides site-specific estimates of groundwater flow, discharge rates and pollutant concentrations to Trabuco Creek based on the Property's capability to infiltrate surface water from Production Areas.  The analysis will be based upon technical data related to the Facility's soil profile and geotechnical aspects. This report will be certified by a hydrogeologist in consideration of the following field data:

- Soil samples will be obtained for laboratory analysis and will be used to provide input parameters for the modeling.  These parameters include soil moisture (initial water content), saturated and unsaturated hydraulic conductivity, organic carbon content, porosity, bulk density, soil classification, and Atterberg limits.
- Depth to groundwater will be measured from at least two borings.

**13.4.**  Any groundwater monitoring plan must include, at a minimum:

**13.4.1.**   Installation of no fewer than three monitoring wells to accomplish the objective set forth in the above Paragraph 13.3. The parties expressly acknowledge that some of the monitoring wells may need to be ideally located on

7

adjacent properties because of the potential for infiltrated storm water to be determined to be a point source discharge as that term is defined in *Maui*. RSV shall use reasonably best commercial efforts to obtain proper authorizations and permission from adjacent property owners for the installation and use of monitoring wells.

13.4.2.    RSV shall survey the top of each well casing for the purposes of establishing elevation of groundwater during groundwater monitoring events.

13.4.3.    Immediately prior to collecting groundwater samples after a rain event, RSV shall measure and record the elevation of the top casing of each well to calculate the elevation of groundwater. This information will be used to establish groundwater flow direction.

13.4.4.    RSV shall collect groundwater samples at the Facility 24-48 hours after four (4) Qualifying Storm Events ("QSEs")[2].

13.4.5.    RSV shall analyze groundwater samples for $NO_3$, phosphorous, TDS and conductivity consistent with groundwater basin plan objectives.  In addition, RSV shall analyze E. Coli from Table 1.

13.4.6.    Should RSV's groundwater sampling demonstrate that the combined annual averages for Nitrate ($NO_3$), Phosphorous, TDS and Conductivity for the two downstream groundwater wells minus the annual average for Nitrate (NO3), Phosphorous, TDS and Conductivity for the upstream well are below those set forth in the Basin Plan Water Quality Objectives, RSV will discontinue groundwater sampling for these constituents.

13.4.7.    Should RSV's groundwater sampling demonstrate average annual concentrations for E. Coli from the downstream wells are less than or equal to the

---

[2] The term QSE shall mean A precipitation event that: a. Produces a discharge for at least one drainage area; and b. Is preceded by 48 hours with no discharge from any drainage area.

[Proposed] Consent Decree                                      Civil Case No. : 8:20-cv-01993

average annual concentrations for the upstream groundwater monitoring well, RSV will discontinue groundwater sampling for this constituent.

        **13.4.8.**     RSV shall not be required to post groundwater sampling data to SMARTS

        **13.4.9.**     If Coastkeeper establishes that there is a direct discharge (or a functional equivalent of a direct discharge) of infiltrated storm water that constitutes the functional equivalent of a point source discharge as that term is defined in *Maui* from the Property into Trabuco Creek through professionally prepared reports reasonably similar to those described in Paragraph 13.3 above, then Section C and D (Contaminant Reduction Strategy) of this Consent Decree shall also apply to infiltrated storm water.  In any dispute of the interpretation of said reports, Coastkeeper shall have the burden of proof.

    **13.5.**  RSV agrees to implement the storm water retention BMP plan no later than October 1, 2021.

**B.**    **SWPPP Implementation**

    **14.**    Within fifteen (15) business days of the Effective Date, RSV shall file a Notice of Intent (NOI), or a NONA to comply with the IGP.

    **15.**    Before or concurrently with the filing of the NOI or NONA, RSV shall submit a Nutrient Management Plan (NMP) to the RWQCB.

**C.**    **Numeric Limits for Areas Subject to the IGP**

    **16.**    Storm water discharged from RSV associated with industrial and CAFO activities shall not contain pollutants above the levels set forth in **Table 1**, or a Contaminant Reduction Strategy (CRS) shall be prepared pursuant to Paragraph 16.1.

9

**Table 1: Numeric Limits for Discharges from Areas Subject to the IGP**

| Parameter | Limit | Test Method | Source |
|---|---|---|---|
| E-coli | 126 cfu/100 mL | SM 9221 FCE | |
| Total Suspended Solids | 100 mg/L | SM-2540-D | IGP |
| Total Nitrogen (N+N) | 0.68 mg/L | SM 4500-NO3-E | IGP |
| Ammonia as N | 2.14 mg/L | SM 4500-NH3 B+C or E | IGP |
| Oil and Grease (O&G) | 15 mg/L | EPA 1664A | IGP |
| Ph | 6.0 – 9.0 | See IGP § XI.C.2 | IGP |
| Total Phosphorous | 2.0 mg/L | SM 4500 B+E | IGP |
| BOD | 30 mg/L | SM 5210B | IGP |

**Contaminant Reduction Strategy (CRS) Requirements**

**16.1.** In the event a CRS is required this CRS will identify BMPs required to capture and retain the ten year/24 hour storm event to prevent discharges of storm water to Trabuco Creek, or, in the alternative, provide a plan to achieve Table 1 limits at the point storm water discharges from RSV's property line.

D.      **Sampling and Analysis.**

**17.** RSV will maintain a recording rain gauge capable of recording rainfall to 0.1 inches. RSV shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Plaintiff with RSV's Monitoring Plan, as described below.

**18.** RSV will develop a plan (the "Monitoring Plan") for monitoring all storm water and non-storm water discharges from industrial and production areas resulting from QSEs" pursuant to the requirements of this Consent Decree and the IGP.

**19.** During the life of this Consent Decree, RSV shall collect samples of storm water discharges from industrial and production area QSEs in conformity with its Monitoring Plan included in its Stormwater Pollution Prevention Plan ("SWPPP") and upload the data to the California Storm Water Multiple Application and Report Tracking System ("SMARTS").

**20.** Should RSV demonstrate full compliance with all Table 1 discharge limitations for four (4) consecutive QSEs, RSV may reduce sampling in compliance with the IGP, except under no circumstances shall RSV be permitted to collect samples from less than four (4) QSEs from areas subject to the IGP during any reporting year (July 1 to June 31), however RSV may cease sampling for any analyte identified in Table 1 following four (4) consecutive reported sampling results where the pollutant is not detected.

**21.** RSV shall comply with the analytical methods as required by this Consent Decree and as more fully described in the Monitoring Plan as well as the requirements set forth in 40 CFR part 136. Where there is a conflict between the Consent Decree and 40 CFR part 136, the provisions of 40 CFR part 136 shall apply.

**22.** RSV shall post the complete laboratory results of all sampling required by this Consent Decree at outfalls servicing Production Areas as identified in the Monitoring Plan on SMARTS and notify Plaintiff of the posting.

**E.** **Visual Observations**

**23.** During the life of this Consent Decree, RSV shall conduct and document visual observations pursuant to the IGP and as more fully described in the SWPPP.

**F.** **Monitoring and Reporting Program Revisions**

**24.** RSV shall notify Plaintiff when Annual Reports are uploaded to SMARTS.

**25.** RSV shall revise the Monitoring Plan if there are any changes in operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to any CRS and upload the revisions to SMARTS.

**26.** RSV shall notify Plaintiff when revised Monitoring Plans are uploaded to SMARTS. Plaintiff shall provide comments, if any, to RSV within thirty (30) days of receipt of notice that the revised Monitoring Plan has been uploaded. Failure to receive comments within thirty (30) days shall be deemed conclusive evidence of approval of the

11

Monitoring Plan by Plaintiff. RSV shall incorporate Plaintiff's comments into the Monitoring Plan or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

27.   This section does not prevent RSV from submitting a Monitoring Plan amendment or revision to SMARTS in any way, nor does it impair RSV's ability to modify the Monitoring Plan unilaterally.

28.   Any disputes as to the adequacy of the Monitoring Plan or revisions thereto shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

**G.   SWPPP Revisions**

29.   Within thirty (30) days of termination of the public review period for its NMP, RSV shall amend its SWPPP to incorporate its NMP by reference.

30.   RSV shall revise the SWPPP if there are any changes in operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to any CRS and upload the revisions to SMARTS.

31.   RSV shall notify Plaintiff when SWPPP revisions are uploaded to SMARTS.

32.   Plaintiff shall provide comments, if any, to RSV within thirty (30) days of receipt of notice that the SWPPP has been uploaded. Failure to receive comments within thirty (30) days shall be deemed conclusive evidence of approval of the SWPPP by Plaintiff. RSV shall incorporate Plaintiff' comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

33.   This section does not prevent RSV from submitting a SWPPP amendment or revision to SMARTS in any way, nor does it impair RSV's ability to modify the SWPPP unilaterally.

[Proposed] Consent Decree                                    Civil Case No. : 8:20-cv-01993

**34.**     Any disputes as to the adequacy of the SWPPP or revisions thereto shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

**H.**     **Employee Training**

**35.**     Within thirty (30) days of the Effective Date of this Consent Decree, RSV shall develop and implement a training program (the "Training Program"), in compliance with the IGP and its SWPPP. At a minimum, the Training Program shall include the following:

**35.1.**  Language. RSV shall conduct the Training Program in at least one language or languages in which all designated employees participating in the Training Program are fluent.

**35.2.**  Non-Storm Water Discharges. RSV shall train all designated employees on the prohibition of NSWDs, so that employees know what constitutes a NSWD, and how to detect and prevent non-storm water discharges to ensure compliance with this Consent Decree and the IGP.

**35.3.**  Best Management Practices (BMPs). RSV shall train all designated employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at properties under RSV's jurisdiction that are regulated under the IGP.

**35.4.**  Storm Water Sampling. RSV shall designate an adequate number of employees or contractors necessary to collect storm water samples from each outfall identified in the Monitoring Plan. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

**35.5.**  <u>Visual Observation Training</u>. RSV shall provide training to all designated employees regarding visual observations pursuant to this Consent Decree and the SWPPP.

**36.**  Training shall be provided by a qualified individual who is familiar with the requirements of this Consent Decree and the SWPPP. The training shall be repeated as necessary to ensure that all employees assigned storm water responsibilities are familiar with the requirements of this Consent Decree and the SWPPP. All new designated staff shall receive this training before assuming responsibilities for implementing the RSV's SWPPP or Monitoring Plan.

**37.**  RSV shall maintain training records to document compliance with this Section and shall provide Plaintiff with a copy of these records annually if requested. These training records must indicate the date and nature of the training but are not required to disclose any employee information.

**I.**  **Monitoring and Reporting**

**38.**  **Site Inspections**

**38.1.**  During the term of this Consent Decree, Defendants shall permit representatives of Coastkeeper to perform two (2) site inspections during normal operating hours during each reporting year as follows: two (2) site inspections each reporting year during the life of this Consent Decree (July to June).

**38.2.**  Coastkeeper shall provide Defendants' designated representatives at least 48 hours' notice in advance of any site inspections. For any site inspection planned to occur in wet weather, where a change in forecasted precipitation would frustrate wet weather observations and/or samples, Coastkeeper shall be entitled to reschedule the site inspection. Coastkeeper agrees to give Defendants' representatives at least fifteen (15) hours' notice of its intent to reschedule a requested wet weather site inspection.

**38.3.**  Provided, that in the event of a dispute regarding Defendants' compliance with this Consent Decree and provided a site inspection would be relevant to resolving

the Parties' dispute, Coastkeeper may request an additional site inspection and the Parties agree to meet and confer regarding the request. Defendants shall not unreasonably deny Coastkeeper's request for an additional site inspection.

38.4.  Coastkeeper representatives shall execute the liability waiver attached hereto as **Exhibit D** prior to entering the property.

38.5. Coastkeeper acknowledges it is their obligation to obtain prior approval from other property owners or easement holders including but not limited to adjacent properties or the City of San Juan Capistrano should they wish to inspect areas not under RSV's control. Any expenses related to obtaining the necessary authorizations necessary to inspect these other areas shall be the sole responsibility of Coastkeeper.

39.  **Document Provision**

39.1.  During the life of this Consent Decree, RSV shall notify Plaintiff of all documents related to compliance with the IGP and NMP at the Facility that are not posted to SMARTS, which are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality. RSV shall email such reports and documents to Plaintiff within ten (10) days of the date they are sent to the agencies, counties, and/or municipalities.

39.2.  RSV shall email any correspondence related to RSV's compliance with the IGP or NMP received by RSV from any regulatory agency, state or local agency, county, or municipality which are not posted to SMARTS within ten (10) days of RSV's receipt of correspondence. For those documents, which are posted to SMARTS, RSV shall notify Plaintiff of such posting within ten (10) days of the posting.

39.3.  RSV shall not be required to disclose any information or documents that constitute a trade secret or are subject to the Attorney Client Privilege or the Attorney Work Product doctrine.

## IV. ENVIRONMENTAL PROJECT, ATTORNEYS' FEES AND COSTS, AND STIPULATED PAYMENTS

### A. Compliance, Monitoring, and Oversight

40. RSV agrees to defray Coastkeeper's future monitoring of RSV's compliance with this Consent Decree in an amount of Fifteen Thousand Dollars ($15,000) within thirty (30) days of the Effective Date of the Consent Decree. If RSV does not receive a NONA from the Regional Board by one year from the Effective date, an additional $15,000 monitoring payment shall be due to Coastkeeper thirty (30) days from the one-year anniversary of the Effective Date. All payments shall be made via wire transfer or check payable to: "Orange County Coastkeeper" and delivered by certified mail or overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA

### B. Stipulated Penalties

41. RSV shall make stipulated payments of Five Hundred Dollars ($500.00) for each failure to comply with each deadline described in this Consent Decree after five (5) days' notice by Coastkeeper of such a failure to comply without cure. Payments shall be made to Mission Resource Conservation District. Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline after five (5) days' notice by Coastkeeper. Defendant shall provide Coastkeeper with a copy of each such payment at the time it is made. Payments shall be addressed to Mission Resource Conservation District, Attn: Darcy G. Cook, 1588 South Mission Road, Suite 100, Fallbrook, California 92028.

### C. Environmental Project

42. To remediate the alleged environmental harms alleged in the Complaint, RSV agrees to make an initial payment of Ten Thousand Dollars ($10,000) to Mission Resource Conservation District to benefit water quality in the Mission Viejo Hydrologic Area 601.20 thirty (30) days from the Effective Date. RSV shall make an additional

16

payment of Twenty Thousand Dollars ($20,000) one year from the Effective Date. Payments shall be addressed to Mission Resource Conservation District, Attn: Darcy G. Cook, 1588 South Mission Road, Suite 100, Fallbrook, California 92028.

**D.    Reimbursement of Attorneys' Fees and Costs**

    **43.**    RSV shall pay a total of Eighty Thousand Dollars ($80,000.00) to Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred by investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made to Orange County Coastkeeper and delivered to Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626 within thirty (30) days of the Effective Date.

**V.    DISPUTE RESOLUTION**

**A.    Continuing Jurisdiction**

    **44.**    This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree, unless a Party files and is granted a timely motion requesting an extension of time for the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

17

**B.     Meet and Confer**

**45.**     A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date the notice is received. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.     Dispute Resolution**

**46.**     If the Settling Parties cannot resolve a dispute by the end of the meet and confer process, the Parties may agree to enter into the Alternative Dispute Resolution process provided by the United States District Court for the District of California, including but not limited to stipulating to a hearing before a Magistrate Judge.

**47.**     If the Settling Parties cannot resolve a dispute by the end of the Alternative Dispute Resolution process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion if requested by any Settling Party.

**47.1.**  Burden of Proof. In any dispute resolution proceeding, the moving party shall have the burden of demonstrating compliance or non-compliance with the terms of the Consent Decree.

**47.2.**  Enforcement Fees and Costs. Litigation costs and fees incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing party in accordance with the standard established by § 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## VI.   MUTUAL RELEASE OF LIABILITY, DISPUTE RESOLUTION AND COVENANT NOT TO SUE

**A.   Plaintiff's Release**

48.   Upon the Effective Date of this Consent Decree, Plaintiff, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, RSV and Financial Guarantor (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and Complaint up to the Effective Date of this Consent Decree.

**B.   Parties' Release**

49.   Unless specifically provided for in this Consent Decree, the Settling Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Settling Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from any additional attorney's fees or expenses related to the resolution of this matter.

50.   Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to RSV's compliance with the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.  However,

Plaintiff, their employees, officers, members, and directors shall not be entitled to commence any civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), against RSV, for any violation which occurred during the period of time when this Consent Decree was in force that was the subject of either the Notice Letter, the Complaint or this Consent Decree.

## VII.  FORCE MAJEURE

51.    A Party shall not be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control as defined by the Force Majeure provisions herein, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, pandemic or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability to obtain the necessary authorizations, approvals, or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is not a factor in whether it is reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all of the financial obligations required under this Consent Decree.

52.    If RSV claims compliance was or is impossible as defined by the Force Majeure provisions herein, it shall notify Plaintiff in writing as soon as possible, but in no

20

[Proposed] Consent Decree                                    Civil Case No. : 8:20-cv-01993

event more than five (5) business days of the date that RSV learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

53.     Within ten (10) days of sending the Notice of Nonperformance, RSV shall send Plaintiff a detailed description of the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by RSV to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. RSV shall adopt all reasonable measures to avoid and minimize such delays.

54.     The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible as defined by the Force Majeure provisions herein due to an event or issue in Paragraph 51, despite the timely good faith efforts of RSV, new deadlines shall be established.

55.     If Plaintiff disagrees with RSV's Notice of Nonperformance as defined by the Force Majeure provisions herein, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article VI. In such proceeding, RSV shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VIII.  MISCELLANEOUS PROVISIONS

### A.      No Admission of Liability

56.     Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be

construed as an admission of violation of any law, rule, or regulation. RSV maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

**B.  <u>Assignment</u>**

57.     Subject only to the express conditions contained in this Settlement Agreement, all of the rights, duties and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a new successor or assign (a "Transferee") will continue equestrian operations at the Facility, RSV shall notify Coastkeeper ten (10) days in advance of the proposed transfer (the "Transfer Notice") and within ten (10) days following the Transfer Notice, RSV will provide Coastkeeper with a written assignment duly executed and acknowledged by RSV and the Transferee assigning RSV's obligations under this Consent Decree to the Transferee.

**C.  <u>Construction</u>**

58.     The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms are defined in the IGP, the Clean Water Act, or specifically herein.

**D.  <u>Administrative Delay</u>**

59.     RSV shall diligently pursue any approvals required for compliance with this Consent Decree. Should such diligent pursuit of approvals required for compliance be unavailing due to actions by or inaction on the part of any governmental or regulatory entity with jurisdiction over the RSV, and RSV reasonably demonstrates these delays are not attributable by any action or inaction on the part of RSV, any relevant compliance deadlines set forth in this Consent Decree shall be tolled until such time as Parties agree to an alternative means of compliance with the Consent Decree pursuant to the Force Majeure clause contained herein.

**E.**   **Choice of Law**

**60.**   The laws of the United States shall govern this Consent Decree.

**F.**   **Severability**

**61.**   In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**G.**   **Correspondence**

**62.**   Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail to all parties identified below:

If to Plaintiff Coastkeeper:

**Orange County Coastkeeper**
Attn: Sarah Spinuzzi
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Email: sarah@coastkeeper.org

If to Defendants:

**(a)**   **Rancho Sierra Vista**
Attn:  Patty Garrison
31441 Avenida De La Vista
San Juan Capistrano, CA 92675
Email: Patty@rsvequestrian.com

**(b)**   **Varco & Rosenbaum Environmental Law Group LLP**
Environmental Law Group LLP
Attn: S. Wayne Rosenbaum
225 W. Broadway, Suite 1900
San Diego, CA 92101
Email: swr@envirolawyer.com

If to Financial Guarantor:

**(a)**   **Rancho HHO Land Corporation**

Attn:Patty Garrison
31441 Avenida De La Vista
San Juan Capistrano, CA 92675
Email: Patty@rsvequestrian.com

23

**(b)    Varco & Rosenbaum Environmental Law Group LLP**
Environmental Law Group LLP
Attn: S. Wayne Rosenbaum
225 W. Broadway, Suite 1900
San Diego, CA 92101
Email: swr@envirolawyer.com

**63.**     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

**H.    Effect of Consent Decree**

**64.**     Except as provided herein, Plaintiff does not, by their consent to this Consent Decree, warrant or aver in any manner that RSV's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of RSV to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

**I.    Counterparts**

**65.**     This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**J.    Modification of Consent Decree**

**66.**     This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

[Proposed] Consent Decree                                    Civil Case No. : 8:20-cv-01993

**K.    Full Settlement**

      **67.**    This Consent Decree constitutes a full and final settlement of this matter.

**L.    Full Integration**

      **68.**    This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

**M.    Authority of Counsel**

      **69.**    The undersigned representatives for Plaintiff and RSV each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

**N.    Authority of Parties**

      **70.**    The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

      **71.**    The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

[Proposed] Consent Decree                                                           Civil Case No. : 8:20-cv-01993

1

2       **72.      IN WITNESS WHEREOF**, the undersigned have executed this Consent

3   Decree as of the date first set forth below.

4

5   **APPROVED AS TO CONTENT**

6   Dated:_____          By:_____
                                        Garry Brown, Executive Director
7                                       Orange County Coastkeeper

8

9   Dated:_____          By:_____
                                        Name: Patty Garrison
10                                      Title: President/Owner
                                        Rancho Sierra Vista
11

12
    Dated:_____          By:_____
13                                      Name: Patty Garrison
                                        Title: President/Owner
14                                      Rancho HHO Land Corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPROVED AS TO FORM**

Dated:_____      By:_____
                                    Sarah Spinuzzi, Senior Staff Attorney
                                    Orange County Coastkeeper
                                    Attorney for Plaintiffs

Dated:_____      By:_____
                                    S. Wayne Rosenbaum, Partner
                                    Varco & Rosenbaum Environmental Law Group
                                    Attorney for Equestrian Services II, Inc. and
                                    HFT1, LLC

**IT IS SO ORDERED.**

Dated: _January 05, 2021_____   By:_____
                                    Hon. James V. Selna
                                    United States District Court Judge

[Proposed] Consent Decree                            Civil Case No. : 8:20-cv-01993